**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **CRIMINAL NO. 19-91** |
| ) | |
| **TAMMY KEEFER** ) | |

**SENTENCING MEMORANDUM**

Plaintiff United States of America, through its counsel, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, and Mary McKeen Houghton, Assistant United States Attorney for the Western District of Pennsylvania, respectfully submits to the Court this Sentencing Memorandum.

**I. INTRODUCTION**

On June 11, 2019, Tammy Keefer entered a guilty plea to the two-count Indictment at Criminal Number 19-91 pursuant to the terms of a Plea Agreement between Tammy Keefer and the United States. The Indictment charges the defendant with two counts of tax evasion in violation of 26 U.S.C. § 7201. Count One of the Indictment charges the defendant with tax evasion for the calendar year 2012. Count Two charges the defendant with tax evasion for the calendar year 2013.

In the Plea Agreement, Tammy Keefer and the United States agreed that for purposes of 2T4.1 of the Sentencing Guidelines, the tax loss is $77,961, which is calculated as follows: (1) for calendar year 2012, the tax loss is $64,526; and (2) for calendar year 2013, the tax loss is $13,435. This results in an offense level of 14.

The parties agreed that the offense level of 14 must be increased by two levels for illegal source under 2T1.1(b)(1) of the Sentencing Guidelines. Tammy Keefer and the United States also

1

agreed that the offense level should be lowered by three levels for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines. Thus, the final offense level is 13. Since the defendant has a criminal history category of IV, the Sentencing Guidelines range of imprisonment is 24 – 30 months. The defendant also agreed to pay restitution to the IRS in the amount of $77,961.

A sentence within the Sentencing Guidelines range of 24 - 30 months incarceration is sufficient but not greater than necessary to fulfill the sentencing goals outlined in 18 U.S.C. § 3553(a).

## II. FACTUAL BACKGROUND

At the change of plea hearing, the defendant agreed to the following facts. Tammy Keefer engaged in a scheme with another individual, Lisa Cavanaugh, to embezzle funds from the business, CAP Glass, a glass recycling company that collects and re-distributes recycled glass.

Lisa Cavanaugh was employed at Carry All Products, Etc., which was owned by Shawn Pilla ("Pilla"). As part of her duties, Cavanaugh handled the accounts payable and accounts receivable for several Pilla-owned companies, including CAP Glass.

Tammy Keefer was employed at Coffman Transport. Lisa Cavanaugh issued checks payable to venders, including Coffman Transport and other trucking companies that hauled glass for CAP Glass. Coffman Transport was owned and operated by Robert Coffman. Keefer, who was formerly Coffman's wife, ran the office of Coffman Transport.

Tammy Keefer engaged in a scheme with Lisa Cavanaugh wherein Tammy Keefer submitted false and fraudulent invoices of Coffman Transport to CAP Glass. Tammy Keefer and Lisa Cavanaugh each received proceeds of the illegal scheme. Tammy Keefer failed to pay taxes on the illegal proceeds. Keefer evaded and defeated the income tax due from the illegal income

derived during the scheme. Keefer did not file tax returns for tax years 2012 and 2013. The tax loss is $77,961 from Keefer's unreported income from the scheme.

During the scheme, Tammy Keefer and Lisa Cavanaugh took check withdrawals from a CAP Glass bank account and transacted those checks at various financial institutions in a manner that did not readily identify those matters as income.

Tammy Keefer opened and used a bank account at PNC Bank that was designated, "Tammy L. Coffman dba Coffman Transport." Tammy Keefer was not authorized to open or use such an account. Tammy Keefer deposited certain of the stolen checks from CAP Glass into this unauthorized bank account at PNC Bank.

Tammy Keefer negotiated Coffman Transport checks made out to cash and used the proceeds thereof for herself in a manner that did not readily identify the withdrawals as income to Tammy Keefer. These checks were drawn on the authorized Coffman Transport bank account, as well as on the unauthorized dba Coffman Transport account.

Tammy Keefer also made cash withdrawals from Coffman Transport's authorized bank account in a manner that did not readily identify the withdrawals as income to Tammy Keefer.

Tammy Keefer negotiated legitimate checks made out to Coffman Transport in such a manner as to cause a "split deposit," where part of the amount of the check went into the Coffman Transport account where it was available for the ordinary business process, and part of the amount of the check was returned to Tammy Keefer as cash with no record as to its disposition.

Lisa Cavanaugh gave a videotaped confession of the scheme to the Pennsylvania State Police in which she laid out the theft scheme with Tammy Keefer.

## III. THIRD CIRCUIT SENTENCING PRECEDENT

The Third Circuit has set forth a three-step process that district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1) District courts must continue to calculate a defendant's Sentencing Guidelines range precisely as they would have before *Booker*.

(2) In doing so, district courts must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Sentencing Guidelines calculation, and take into account the Third Circuit's pre-*Booker* case law, which continues to have advisory force.

(3) Finally, district courts are to exercise their discretion by considering the relevant factors under 18 U.S.C. § 3553(a) in setting the sentence they impose regardless whether it varies from the sentence calculated under the Sentencing Guidelines. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006)); *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006)). *See also United States v. Smalley*, 517 F.3d 208, 211-12 (3d Cir. 2008) (stating that the *Gunter* directive is consistent with later Supreme Court decisions).

In calculating the guideline range, district courts must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the *Booker* decision. *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (*en banc*). The failure to properly calculate the advisory guideline range will rarely be harmless error. *United States v. Langford*, 516 F.3d 205, 215 (3d Cir. 2008).

At the third step of the sentencing process, district courts must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. §

3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *Cooper*, 437 F.3d at 329. *See also Rita v. United States*, 127 S. Ct. 2456, 2468 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority."); *United States v. Schweitzer*, 454 F.3d 197, 205-06 (3d Cir. 2006).

The government explains below its view of the proper consideration in this case of the advisory Sentencing Guidelines range and the Section 3553(a) factors, which supports a sentence of incarceration within the range of 24 - 30 months.

## IV. <u>GUIDELINES CALCULATION</u>

In the Plea Agreement, Tammy Keefer and the United States stipulated that for purposes of Section 2T4.1 of the Sentencing Guidelines, the tax loss for guideline sentencing purposes was $77,961, which includes the conduct charged in the Indictment and all relevant conduct. This results in an offense level of 14. The parties agreed that the offense level of 14 must be increased by two levels for illegal source under 2T1.1(b)(1) of the Sentencing Guidelines. Tammy Keefer and the United States also agreed that the offense level should be lowered by three levels for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines. Thus, the final offense level is 13. Since the defendant has a criminal history category of IV, the Sentencing Guidelines range of imprisonment is 24 – 30 months. The defendant agreed to pay restitution the IRS in the amount of $77,961.

A sentence within the Sentencing Guidelines range of 24 - 30 months incarceration is sufficient but not greater than necessary to fulfill the sentencing goals outlined in 18 U.S.C. § 3553(a).

## V. SECTION 3553(a) FACTORS

The Supreme Court has stated, "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). The Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

District courts must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### A. The Nature of the Offenses

The crimes involved in this case are undoubtedly very serious. These crimes were not easy or opportunistic; they required planning, hard work and organization. The defendant's crimes were not crimes resulting from a single decision or a momentary impulse. They were calculated crimes.

In order to perpetuate this criminal activity, multiple discrete acts and decisions were required. The defendant's conduct here was orchestrated. It was coordinated and planned. The defendant was methodical. Most importantly, the defendant's conduct was driven by greed.

### B. History and Characteristics of the Defendant and the Need to Provide the Defendant with Medical Care

In this case, the defendant has a criminal history category of IV. The Sentencing Guidelines range of 24 - 30 months imprisonment adequately takes into account the defendant's criminal history category of IV. The defendant has no medical condition that cannot be addressed during incarceration.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offenses

Congress requires that sentencing courts consider the need for the sentence imposed to reflect the seriousness of the offense. The instant offenses are, without question, very serious. The defendant's fraudulent conduct involved $77,961 in unpaid taxes based upon income derived from theft.

The seriousness of Tammy Keefer's offenses requires imprisonment. A sentence of imprisonment within the Sentencing Guidelines range of 24 - 30 months will properly reflect the seriousness of the offenses.

### D. The Need for the Sentence to Promote Respect for the Law

Promotion of respect for the law is another important goal of sentencing. A sentence of imprisonment within the range of 24 - 30 months incarceration is necessary to promote respect for the law. It will convey to the public and to the defendant that tax evasion is a crime that is taken seriously and one that is not accepted in the Western District of Pennsylvania.

### E. The Need for the Sentence to Provide Just Punishment

A sentence of imprisonment within the Sentencing Guidelines range of 24 - 30 months is just. Such a sentence would serve to adequately punish the defendant for her methodical and thoughtful criminal conduct to evade taxes. A sentence of imprisonment within the range of 24 - 30 months incarceration also fairly takes into consideration the three level reduction for the defendant's acceptance of responsibility as well as her criminal history category of IV.

### F. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct

In white-collar prosecutions, the sentence imposed is important to deter the defendant and the public from committing similar crimes in the future. Given the difficulties of uncovering and prosecuting this type of fraud, the deterrent impact of prison sentences is important to the mission of law enforcement and the financial integrity of the government. A term of incarceration within the Sentencing Guidelines range of 24 - 30 months incarceration will resonate within the community. A sentence of imprisonment with the range of 24 - 30 months incarceration is wholly appropriate here and is necessary to deter similar criminal conduct.

Prison sentences play a vital role in deterring white-collar crime "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal citations omitted).

A sentence within the range of 24 - 30 months incarceration is needed to adequately deter the defendant from engaging in such conduct in the future.

### G. The Need for the Sentence Imposed to Protect the Public

A variance below the Sentencing Guidelines range of 24 - 30 months is not warranted. In the event that the Court were to sentence the defendant below the 24 - 30 month range, the defendant could easily believe that she could commit a similar crime again and receive little or no punishment. A sentence of imprisonment within the range of 24 - 30 months incarceration is sufficient but not greater than necessary to fulfill the factors set forth in Section 3553(a). *United States v. Kluger*, 722 F.3d 549, 567 (3d Cir. 2013).

### H. The Sentencing Range Established by the Sentencing Guidelines

Another factor Congress requires courts to review when determining a sentence is the Sentencing Guidelines range. Based upon the stipulation of the defendant and the government, the Sentencing Guidelines range in this case is 24 - 30 months incarceration. This range takes into account the defendant's criminal history category of IV. A sentence within the Sentencing Guidelines range of 24 - 30 months incarceration is sufficient but not greater than necessary to achieve the sentencing goals outlined in 18 U.S.C. § 3553(a).

### I. Kinds of Sentences Available

The maximum term of imprisonment in this case is five years at each of the two counts in the Indictment, 26 U.S.C. § 7206(1). Based upon a total offense level of 13 and a criminal history category of IV, the Sentencing Guidelines range is 24 - 30 months imprisonment.

The court may impose a term of supervised release of not more than three years at each count under 18 U.S.C. § 3583(b)(2). Since the defendant's offenses are Class D felonies, the

Sentencing Guidelines range for a term of supervised release is one to three years at each count under Section 5D1.2(a)(2) of the Sentencing Guidelines.

Under 18 U.S.C. § 3561(c)(1), the defendant is eligible for not less than one but not more than five years' probation per count because the offenses are Class D felonies. One of the following must be imposed as a condition of probation: a fine, restitution or community service. Under Section 5B1.1, comment note 2, of the Sentencing Guidelines, the defendant is not eligible for probation since the applicable guidelines range is in Zone D.

The government recommends a sentence of imprisonment within the Sentencing Guidelines range of 24 - 30 months. A sentence within the Sentencing Guidelines range of 24 - 30 months incarceration is sufficient but not greater than necessary to fulfill the sentencing goals outlined in 18 U.S.C. § 3553(a).

A sentence within the Sentencing Guidelines range of 24 - 30 months incarceration will provide adequate deterrence and will discourage others from committing the crime of filing a false claim against the United States. A probationary sentence would not promote respect for the law because it would actually encourage others to engage in similar criminal behavior. Instead, a term of imprisonment within the Sentencing Guidelines range of 24 - 30 months would best achieve the goals articulated in 18 U.S.C. § 3553(a). A term of supervised release of one year at each count following imprisonment should also be imposed by Court in accordance with Section 5D1.2(a)(2) of the Sentencing Guidelines, since the defendant's offenses are Class D offenses.

**J.  Fine**

Tammy Keefer should not receive a fine, as she does not have the ability to pay a fine.

**K.  Restitution**

The defendant has agreed to pay the IRS restitution in the amount of $77,961.

## VI. CONCLUSION

WHEREFORE, the United States respectfully requests that the Court impose a sentence of incarceration within the Sentencing Guidelines range of 24 - 30 months, a term of supervised release within the Sentencing Guidelines range of one year at each count, and an order of restitution in the amount of $77,961 payable to the IRS. This sentence is sufficient but not greater than necessary to fulfill the sentencing goals outlined in 18 U.S.C. § 3553(a).

Respectfully Submitted,

SCOTT W. BRADY
UNITED STATES ATTORNEY

s/ *Mary McKeen Houghton*
Assistant U.S. Attorney
PA ID 31929
700 Grant Street, Suite 4000
Pittsburgh, PA  15219
(412) 894-7370